UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                                    :
ROBERT ABBOTT,                      :
                                    :
          Petitioner,               :     Civ. No. 14-6784 (NLH)
                                    :
     v.                             :     OPINION
                                    :
WARDEN JORDAN HOLLINGSWORTH,        :
                                    :
          Respondent.               :
_____:
```

Petitioner, Robert Abbott, a federal prisoner confined at the Federal Correctional Institution in Fort Dix, New Jersey, brings this petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241, seeking restoration of 41 days of Good Conduct Time credit.  Respondent filed a Response to the Petition on December 17, 2014. (Resp., ECF No. 4).  Petitioner filed a Reply (ECF No. 5) to which Respondent filed a Sur-Reply (ECF No. 6).  Petitioner then filed a final letter in response to the sur-reply. (Pet'r's Resp. ECF No. 7).

This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, the motion will be denied.

I.   BACKGROUND

On May 7, 2008, Petitioner was sentenced in the United States District Court for the District of New Jersey to 90

months incarceration, with five years of supervised release, for Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(A)(1) and (B)(1)(A).  On September 11, 2013, Petitioner was transferred to a Residential Reentry Center ("RRC").  On December 24, 2013, Petitioner received a pass to leave the RRC so that he could attend Christmas dinner with his family.  Upon his return to the RRC on December 25, 2013, Petitioner was required to undergo a urinalysis test to which he tested positive for opiates.

On January 2, 2014, Petitioner received notice of a Center Disciplinary Committee ("CDC") Hearing scheduled for January 3, 2014.  Petitioner requested that Latasha Cryor appear at the hearing as his staff representative.  At the hearing, which ultimately occurred on January 6, 2014, Ms. Cryor was not present.  Nevertheless, the hearing proceeded.  At the hearing, Petitioner pointed out errors in the Incident Report. Specifically, the report listed the date and time of the infraction as "12/26/13" at "12:19 pm." (Resp't's Ex. 5 at 2 "Incident Report", ECF No. 4-6), as opposed to a time on December 25th when he initially returned to the RRC.  The hearing was then suspended.

On January 7, 2014, Petitioner received a revised Incident Report which correctly reported the date and time of the alleged

infraction as "12/25/13 at 21:47 pm." Id.  Petitioner refused to sign for delivery of this Report.  On January 9, 2014, Petitioner received notice of a second hearing to be held on January 10, 2014; however, he waived his right to 24-hour Notice and the hearing took place on January 9 around 5:45 p.m.  The staff representative requested by Petitioner was unavailable and Petitioner rejected the alternative representative offered.

During the CDC hearing on January 9, Petitioner indicated that he had not ingested opiates, but instead had consumed "bagel chips which have poppy seeds on it." (Resp't's Ex. 9 at 2 "Center Discipline Committee Report," ECF No. 4-10).  After considering Petitioner's statements, the Incident Report, the chain of custody and the urinalysis results, the CDC found that Petitioner committed prohibited act 112 and forwarded the matter to the Discipline Hearing Officer ("DHO") for review.

Pursuant to Bureau of Prisons ("BOP") policy, the DHO then certified that the CDC procedure complied with BOP policy and the Wolff requirements, and found that the imposition of sanctions for the infraction was supported by the evidence, as reflected by the DHO's signature on the CDC report. Id.; see also FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT 7300.09, COMMUNITY CORRECTIONS MANUAL, 5.7 20 (1998).  In so finding, on January 30, 2014, the DHO imposed a sanction of 41 days of good conduct time and removal from the RDAP program.  The removal from the program

resulted in the loss of a one-year sentence reduction authorized by 18 U.S.C. § 3621(3).

Petitioner states that additional urine tests subsequent to the alleged infraction date — in December of 2013 and January of 2014 — returned negative results. Petitioner also requested a hair follicle test, the cost of which he offered to pay.

Petitioner appealed and alleged misconduct by officials. His appeals were denied. Respondents concede that Petitioner has exhausted his administrative remedies.

## II.   STANDARD OF REVIEW

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997). See also Wilkinson v. Dotson, 544 U.S. 74 (2005). A challenge to a disciplinary action resulting in the loss of good conduct time is properly brought pursuant to § 2241, "as the action could affect the duration of the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 n. 2 (3d Cir. 2008).

III.  JURISDICTION

This Court has subject matter jurisdiction under § 2241 to consider the instant petition because Petitioner was incarcerated in New Jersey when he filed the Petition, and he challenges the loss of good time credits and one-year sentence reduction. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241–44 (3d Cir. 2005); Barden v. Keohane, 921 F.2d 476, 478–79 (3d Cir. 1990).

IV.  DISCUSSION

A prisoner has a liberty interest in good time credits. Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013).  A prisoner's interest in good time credits "entitle[s] him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2963 41 L.Ed.2d 935 (1974).

In evaluating prisoners' due process rights, courts must be sensitive to the "intricate balancing of prison management concerns with prisoners' liberty." Denny, 708 F.3d at 144 (quoting Sandin v. Conner, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).  The Supreme Court has held that "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in

the record." Superintendent v. Hill, 472 U.S. 445, 454, 105
S.Ct. 2768, 86 L.Ed.2d 356 (1985) (internal quotation marks and
citation omitted).  The Hill standard is minimal and does not
require examination of the entire record, an independent
assessment of the credibility of witnesses, or even a weighing
of the evidence. See Thompson v. Owens, 889 F.2d 500, 502 (3d
Cir. 1989).  The relevant inquiry is whether "there is any
evidence in the record that could support the conclusion reached
by the disciplinary board." Hill, 472 U.S. at 455–56, 105 S.Ct.
at 2774.

     Based on the record before the Court, it is evident that
the procedures enunciated in Wolff, supra, were complied with,
and that there was sufficient evidence to support the finding
that Petitioner committed the infraction in accordance with
Hill, supra.  Accordingly, the Petition will be denied.

A. Procedural Due Process

     Based on the procedural safeguards set forth in Wolff,
Petitioner asserts that his rights to procedural due process
were violated in the following ways: (1) he was not provided
with written notice of the charges against him at least 24 hours
prior to the disciplinary hearing; (2) he did not have the
opportunity to call witnesses and to present evidence in his
defense; (3) he was not afforded the opportunity to have staff
representation during the disciplinary hearing; (4) he was not

provided with a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) the decision-making body was not impartial.

1. 24-Hour Advanced Written Notice of the Charges

With respect to Petitioner's allegation that he was not presented with the charges against him 24 hours in advance of the disciplinary hearing, his claim must be denied.  Petitioner asserts that he received only advanced notice of the upcoming disciplinary hearing, and not the specific charges against him. He further states that he did not see the initial Incident Report until January 6, 2014 during his CDC hearing.  Respondent does not directly respond to this allegation.

Although Petitioner did not receive 24-hours' notice, the January 6 hearing was ultimately suspended and Petitioner concedes that he received proper notice of the charges against him in advance of the hearing scheduled for January 10.  Thus, even assuming a procedural error in failing to provide Petitioner with 24-hour notice of the specific charges against him in advance of the January 6 hearing, no prejudice resulted. Accordingly, Petitioner's rights were not violated in this respect and his argument fails. See Obiegbu v. Werlinger, 488 F. App'x 585 (3d Cir. 2012) (citing Wilson v. Ashcroft, 350 F.3d 377, 380-81 (3d Cir. 2003) (finding no due process violation in the absence of prejudice)).

2. <u>The Right to Call Witnesses and Present Evidence</u>

Petitioner acknowledges that he did not call any witnesses. However, he states that he was not permitted to introduce two types of evidence.  First, Petitioner states that, in support of his theory that his consumption of poppy seed bagel chips resulted in the positive urinalysis test, he submitted a picture of his family's buffet table, a photocopy of the bag and list of ingredients, and a document explaining how the ingestion of poppy seeds could cause a false positive in a urinalysis test. Additionally, Petitioner states that, at the request of the CDC, he provided a written statement regarding this evidence to a member of RRC staff the morning after the January 9 CDC hearing. Petitioner states that he is unsure whether this evidence was ever submitted to, or considered by the DHO.  He points out that the DHO's Report does not mention the evidence.

Petitioner's argument fails.  "Because Petitioner was housed at a halfway house at the time of his incident, due process is afforded at a CDC hearing, not a DHO hearing." <u>Manfredi v. U.S.</u>, Civ. No. 12-1905, 2012 WL 5880343 (D.N.J. Nov. 20, 2012) (collecting cases).  As set forth above, Petitioner explains that he did, in fact, present evidence at the January 9, 2014 CDC hearing.  Thus, he was not denied due process in this respect.

To the extent Petitioner asserts that he was denied due process because he was not permitted to re-submit this evidence to the DHO or to attend the DHO hearing, Petitioner's argument fails because he was not entitled to be present at the DHO hearing. See id.; see also Rini v. Nash, Civ. No. 05-2202, 2005 WL 2033689 at *3 (D.N.J. Aug. 22, 2005) ("Wolff does not mandate that [p]etitioner be granted two hearings[,] one before the CDC and one before the DHO.").

With respect to Petitioner's claim that he was not permitted to submit to a hair follicle test, his argument again fails. The procedural safeguards of Wolff do not guarantee a prisoner the right to present any evidence he wishes. Additionally, with specific respect to second, independent lab tests, courts have held that prisoners do not have a due process right to engage in secondary testing. See Manfredi, 2012 WL 5880343 at *6 (collecting cases). Accordingly, Petitioner's due process rights were not violated because he was denied permission to obtain a hair follicle test.

3. The right to staff representation

Petitioner contends that he twice requested to have Latasha Cryor appear as his staff representative but that he was informed that her presence was not necessary as she could be present at any subsequent DHO hearing. Petitioner states that

he was misinformed and that he was prejudiced by the absence of a staff representative.

The record shows that Petitioner was offered a representative at the January 9 hearing but that he rejected this offer. (Resp't's Ex. 7 "Notice of Center Discipline Committee Hearing," ECF No. 4-8).  Therefore, he was not denied due process.  Any misunderstanding Petitioner may have had about his preferred staff representative's presence at subsequent hearings is irrelevant to his due process claim because he cannot show prejudice. See Obiegbu, 488 F. App'x 585.  The fact remains that Petitioner was given the option of having a staff representative present at his hearing, but he voluntarily elected to move forward without representation.

4. The right to be provided with a written statement of the evidence relied upon and the reasons for the disciplinary action

Petitioner contends that he was not provided a copy of the DHO's Report in a timely manner.  However, Petitioner does not point to any source of law which sets time limits for delivery of DHO Reports to prisoners or which indicates that delivery beyond a specific time limit constitutes a due process violation.  Furthermore, Petitioner was able to appeal the decision and pursue administrative remedies; therefore, he was not prejudiced by any such delay.

Petitioner further asserts that he was denied due process because, although the Report contains the CDC's findings, there is no evidence that the DHO conducted an independent investigation as required by the BOP Program Statement 5270.09, Inmate Discipline Program.  However, because Petitioner was confined at an RRC at the time of the incident, he was not entitled to independent review by the DHO. See FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT 5270.09, INMATE DISCIPLINE PROGRAM, PRINCIPLES 3 (2011) ("Community Corrections Managers may take disciplinary action on inmates in contract RRC's.").

Rather, the Federal Bureau of Prison Program Statement makes clear that he was entitled only to have DHO review and certify that the CDC complied with Wolff.  As courts in this district have explained:

> In its Program Statement 7300.09, Community Corrections Manual, the Bureau of Prisons ("BOP") provides for a slightly modified procedure for prisoners confined to a Residential ReEntry Center in anticipation of release. That is, for RRC prisoners, the in-person disciplinary hearing is conducted before the RRC's Center Disciplinary Committee. The recommendation of the CDC is forwarded to the Disciplinary Hearing Officer for review, certification that the CDC procedure complied with BOP policy and the Wolff requirements, and imposition of sanctions for any infractions found to be supported by the evidence, all as reflected by the DHO's signature on the CDC report.

Bellamy v. Hollingsworth, Civ. No. 13-7783, 2014 WL 714905 at *5 (D.N.J. Feb. 21, 2014); FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT

7300.09, COMMUNITY CORRECTIONS MANUAL, 5.7 20 (1998).  In this case, the DHO reviewed, certified, imposed a final action and signed and dated the CDC report which contained the basis for its findings.  Accordingly, Petitioner was not denied due process.

    5. The decision-making body must be impartial

    Petitioner asserts that the CDC hearing officer made intentional misrepresentations to him with respect to the staff representative's ability to appear a subsequent DHO hearing.  To the extent the CDC hearing officer made inaccurate statements to Petitioner regarding the ability of a staff representative to appear at a subsequent hearing, as discussed above, any such error was harmless because Petitioner was afforded the opportunity to have a staff representative at his CDC hearing.

    Additionally, any such misstatements do not call into question the CDC hearing officer's impartiality, nor do they establish that the CDC hearing officer had any preexisting animosity towards the Petitioner.  Likewise, the fact that the CDC suspended the initial hearing to investigate the errors in the initial Incident Report, offered alternative staff representation to Petitioner, and — according to Petitioner — requested a written statement regarding Petitioner's evidence, undermines Petitioner's claim that he was not provided with an impartial decision-maker.

It is also worth noting that the CDC report indicates that the CDC was comprised of two individuals: a Chairperson and a Member.  Petitioner makes no allegations with respect to the Chairperson, thus, his claim that he did not receive an impartial disciplinary tribunal is further weakened.  Lastly, the Court notes that, pursuant to Wolff, the impartial decision-making body must exclude "those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body." Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).  Here, Petitioner does not allege, and it does not appear, that either of the CDC hearing officers were involved in the investigation or the circumstances underlying the charge against Petitioner.

Ultimately, the record shows that the CDC's findings were based on sufficient evidence and there is nothing before the Court to suggest that Petitioner was not afforded an impartial decision-maker as required by Wolff. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009) (generalized critiques without substantive support are insufficient to demonstrate partiality under Meyers).

B. Other Evidence

Petitioner contends that there exist other evidence that should have been considered by the DHO.  As an initial matter,

as explained above, for RRC prisoners, BOP policy requires only that the DHO review the CDC report and verify that the CDC procedure complied with BOP policy and the Wolff requirements. Therefore, Petitioner had no due process right to submit additional evidence to the DHO.  Nevertheless, in an abundance of caution, the Court will further address his concerns with respect to this additional evidence.

1. The Urine Sample Number

Petitioner points out that there are two numbers associated with his urine sample in the CDC Report.  Specifically, the lab report from Parkway Clinical Laboratories indicates a Sample ID number of 374914 and a Specimen ID number of 36043. (Resp't's Ex. 9 at 4, ECF No. 4-10).  Petitioner contends that this variation supports his assertion that the urine sample in question was misidentified.  However, as Respondent points out, this argument could be seen as contradicting Petitioner's assertion that the positive urinalysis test was a result of his consumption of poppy seed bagel chips.

Respondent fails to explain, with certainty, the purpose of the two different numbers or the distinction between the Specimen ID number and the Sample ID number.  Nevertheless, the presence of the two different numbers does not diminish the strength of the positive urinalysis results because both numbers appear on the lab report.

More to the point, this Court need not reevaluate evidence which was before the CDC. See Thompson, 899 F.2d at 502. Rather, it must decide whether the findings of the prison disciplinary board are supported by some evidence in the record. Hill, 472 U.S. at 455-56, 105 S.Ct. 2786.  Although the presence of both a Sample ID number and a Specimen ID number causes some confusion, there is ample evidence in the record — including Petitioner's own statements explaining the positive urinalysis results — to support the CDC's decision.  Therefore, Petitioner was not denied due process.

### 2. Availability of Narcotics at the LMS RRC

Petitioner states that narcotics and other contraband are readily available at the RRC where he was confined.  He indicates that his urine sample could have been substituted by an RRC officer as part of the fraudulent activity of providing inmates with clean urine samples.  There is nothing in the record to suggest that this occurred.  Petitioner signed the chain of custody report for the urine sample.  Petitioner had the opportunity to raise this argument at his CDC hearing and he does not explain in his Petition how the availability of drugs at the RRC denied him due process at his CDC hearing or how it negates the evidence against him.

<u>V.</u>   <u>CONCLUSION</u>

For the reasons set forth above, Petitioner's request for a writ of habeas corpus will be denied.   An appropriate Order will follow.


___s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: April 29, 2015
At Camden, New Jersey